(A. R. D. 4)

UNITED STATES *v.* DAVIES TURNER & COMPANY

Entry No. 1953.

Third Division, Appellate Term

(Decided July 23, 1952)

*Charles J. Wagner,* Acting Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellant.

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel) for the appellee.

Before Cline, Ekwall, and Johnson, Judges; Cline, J., not participating

Ekwall, Judge:   This is an application for review of the decision and judgment of Judge Lawrence in *Davies Turner & Company* v. *United States*, 26 Cust. Ct. 490, Reap. Dec. 7932.

The merchandise consisted of ferrocerium flints imported from Canada on September 20, 1946.   It was invoiced at $6.50 per pound United States dollars, entered at $7.50 per pound, and appraised at $7.50 per pound, plus $4.20 per pound excise tax, net, packed, in Canadian currency.

Appraisement was made on the basis of foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and the sole question is whether the excise tax of $4.20 per pound is a part of the value.   The court below held that it was not, following *United States* v. *Wm. S. Pitcairn Corp.*, 33 C. C. P. A. (Customs) 183, C. A. D. 334.

Copies of the Canadian Excise Tax Act were attached to plaintiff's exhibit 2, defendant's collective exhibit B, and defendant's collective exhibit C.   It contains the following provisions which are pertinent to this case:

80.   1.   Whenever goods mentioned in Schedules I and II of this Act are imported into Canada or taken out of warehouse, or manufactued or produced in Canada and delivered to a purchaser thereof, there shall be imposed, levied and collected, in addition to any other duty or tax that may be payable under this Act or any other statute or law, an excise tax in respect of goods mentioned.

   (a)   in Schedule I, at the rate set opposite to each item in the said Schedule computed on the duty paid value or the sale price, as the case may be;

\*          \*          \*          \*          \*          \*          \*

2.   Where the goods are imported, such excise tax shall be paid by the importer or transferee who takes the goods out of bond for consumption at the time when the goods are imported or taken out of warehouse for consumption, and where the goods are manufactured or produced and sold in Canada, such excise tax shall be paid by the manufacturer or producer at the time of delivery of such goods to the purchaser thereof.

3.   The tax imposed by this section or by section eighty-three is not payable in the case of goods that are purchased or imported by a manufacturer licensed under this Part or under section one hundred and thirty of *The Excise Act, 1934*, and that are to be incorporated into and form a constituent or component part of an article or product that is subject to an excise tax under this Part or to an excise duty under *The Excise Act, 1934*.   [Italics quoted.]

\*          \*          \*          \*          \*          \*          \*

SCHEDULE I

(See Section 80, ss. 1)

\*          \*          \*          \*          \*          \*          \*

4.   Devices, commonly or commercially known as lighters, which produce sparks, flame or heat, whether or not in combination with other articles, on the separate or combined value, as the case may be_____twenty-five per cent.

\*          \*          \*          \*          \*          \*          \*

12. Ash trays; tobacco pipes; cigar and cigarette holders; cigarette rolling devices and other smokers' accessories, not to include lighters, matches or tobacco _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ thirty-five per cent.

The record also establishes that the Canadian authorities set an arbitrary value of $12 per pound on lighter flints for excise tax purposes. This amount at the rate of 35 per centum, provided for smokers' accessories in Schedule I, paragraph 12, *supra*, equals the amount of $4.20 here in controversy. It appears from a statement of A. F. MacMillan, Chief, Excise Tax Branch, National Revenue, Ottawa, that goods exported are not subject to excise or sales taxes. (Defendant's collective exhibit C.)

An affidavit of Bernard Fisher, vice president of Belgo Canadian Mfg. Co., Ltd., exporter of the merchandise, states that flints such as those involved herein were freely offered and sold to all purchasers in Canada and the United States at various prices depending upon quantity; that certain purchasers in Canada were required to pay the Canadian sales tax of 8 per centum and the Canadian excise tax of 35 per centum; that such taxes were not applicable in the case of flints purchased by licensed manufacturers of lighters to be incorporated into lighters; that from April 1, 1946, to September 30, 1946, 11 sales were made with the excise and sales taxes added, 22 sales were made without such taxes, and 2 sales were made with only the sales tax added. A report of Treasury Representative E. J. Allen, dated June 24, 1946, states that from December 1, 1945, to the end of May 1946, 25 sales were made to license holders and 11 to nonlicense holders. Said report also states that the price to purchasers in the home market for quantities up to approximately 100 pounds was $7.50 per pound and for quantities in excess of that amount, $6.50 per pound; that the price for export to the United States was $6 per pound for large quantities and $7.50 per pound for small quantities. It was held below that the case of *United States* v. *Wm. S. Pitcairn Corp.*, *supra*, was controlling. That case involved a so-called British purchase tax on the wholesale value of all goods purchased from a wholesale merchant or manufacturer selling at wholesale with the exception of purchases by a registered wholesale merchant as stock for his business or by a registered manufacturer as materials. Registered purchasers were entitled to buy goods tax free from any supplier and were responsible for payment of the tax to the Commissioners of Customs and Excise when the goods were passed along to an unregistered purchaser, generally a retailer, or where there was no retailer, the consumer. The court held that the tax was not a part of foreign value, stating (pp. 188, 189):

It is evident, we think, from what has been said that there is substantial evidence of record to establish that merchandise like and similar to that here involved is

not freely offered for sale for home consumption to *all purchasers* in the usual wholesale quantities and in the ordinary course of trade in the country from which exported *at a price which includes the British purchase tax,* and that it is only when such goods enter the "retail realm" or are sold by *registered* manufacturers, wholesalers, or dealers to *unregistered* retailers or dealers or to the consuming public, or are transferred to the retail branch stores of registered manufacturers or wholesalers for retail purposes that they are subject to the British purchase tax.

\* \* \* \* \* \* \*

We have given careful consideration to the arguments presented here by counsel for the Government but are of opinion that as merchandise like and similar to that here involved is not freely offered for sale *to all purchasers for home consumption in the usual wholesale quantities and in the ordinary course of trade at a price which includes the British purchase tax,* the tax is not a proper part of foreign value and, therefore, is not a part of dutiable value. [Italics quoted.]

The Government contends that the instant case is distinguishable on the ground that the so-called British purchase tax was an excise tax against the transaction rather than a tax on the goods themselves. This argument is not tenable since the so-called British purchase tax law, as quoted in the *Pitcairn* case, provided:

18. (1) A tax, to be called purchase tax, shall be charged, subject to and in accordance with the provisions of this Part of this Act, *on the wholesale value of all chargeable goods* bought under chargeable purchases. [Italics supplied.]

The tax was on the goods, but it did not accrue until a sale was made to an unregistered purchaser. Similarly, in the instant case, the tax is on the goods, but it does not accrue until a sale is made to an unlicensed purchaser.

The Government also argues that sales of flints are made to two types of purchasers, one of whom is required to pay the tax; that the price to all purchasers is not free of tax, and, therefore, the price to all purchasers includes the tax. A similar argument was made in the *Pitcairn* case and was disposed of by the appellate division as follows (*United States* v. *Wm. S. Pitcairn Corporation,* 14 Cust. Ct. 367, 371–2, Reap. Dec. 6121):

We are not adopting sales to any particular class of purchasers because there is here no class distinction or preference. The same price is offered to all and the fact that the burden of collecting the tax and remitting it to the Government is shifted from the shoulders of the manufacturer to the "registered" dealer, in those cases where he buys for resale, does not change the situation. This is not a sales tax. The tax is not added by the manufacturer before offering and selling his goods.

The Government attempts to make a distinction between flints which are not to be processed and flints which are to be used in the manufacture of lighters, and claims that the former is the article of commerce involved herein and sales of the latter to manufacturers of lighters may not be considered as sales of flints in ascertaining the

value of the former. However, there is no evidence that the flints not to be processed were in any way different from those which were to be used in the manufacture of lighters. What happened to the flints after they were sold is not material in determining the value at the time of sale.

A careful examination of this case and of the *Pitcairn* case reveals no essential differences between them. Here, as in that case, the merchandise was not freely offered for sale to all purchasers for home consumption in the usual wholesale quantities and in the ordinary course of trade at a price which included the Canadian excise tax. Therefore, the tax is not a proper part of foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended.

On the record herein, we find as facts:

1. That the merchandise consists of ferrocerium flints imported from Canada on or about September 20, 1946.

2. That at the time of exportation a Canadian excise tax of $4.20 (Canadian) per pound was imposed when such or similar merchandise was delivered by the manufacturer to an unlicensed buyer or consumer.

3. That at the time of exportation the Canadian excise tax was not imposed when such or similar merchandise was sold and delivered by the manufacturer to a licensed buyer for incorporation into articles manufactured by the licensed buyer.

4. That the Canadian excise tax formed no part of the manufacturer's selling price or freely offered price.

5. That no excise tax was imposed on such or similar merchandise when exported from Canada.

6. That at the time of exportation such or similar merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the country from which exported, either for home consumption or for exportation to the United States, at the entered value.

We hold as a matter of law:

1. That the proper basis of value for the merchandise herein is foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, there being no higher export value.

2. That the Canadian excise tax of $4.20 (Canadian) per pound forms no part of the foreign value of the merchandise.

3. That the said foreign value is the entered value.

The decision and judgment of the trial court are affirmed and judgment will be rendered accordingly.